UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL STEVEN KNEZEVICH,

    Plaintiff,

v.                                       Case No. 8:18-cv-1589-T-02AEP

UNITED STATES OF AMERICA,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Steven Knezevich ("Plaintiff"), who proceeds *pro se*, initiated this action in state court, asserting claims for defamation, intentional infliction of severe emotional distress, intentional breach of fiduciary duty, and tortious interference with a contractual relationship against two employees of the United States Department of Veterans Affairs ("VA") James A. Haley Veterans' Hospital in Tampa ("Haley") (Doc. 2). Defendant United States of America (the "Government") timely removed the action to federal court (Doc. 1) and subsequently filed the instant Motion to Dismiss (Doc. 18), arguing that Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction and for failure to state a claim. Plaintiff responded in opposition, essentially asserting that his claims should go forward (Doc. 24). For the following reasons, it is recommended that the Government's Motion to Dismiss (Doc. 18) be granted.[1]

---

[1] The district judge referred the matter to the undersigned for issuance of a Report and Recommendation.

**I.      Background**

Plaintiff enlisted with the United States Marine Corps in 1973 and later received an Honorable Discharge in 1976.[2]  As a result, Plaintiff receives medical benefits as a veteran.  To that end, Plaintiff sought medical treatment at the dermatology clinic at Haley on January 31, 2018.  Specifically, Plaintiff reported for a scheduled outpatient surgical procedure to excise an area of his chest to determine whether a cancer, previously diagnosed and removed, had metastasized.  Plaintiff initially met with Registered Nurse Wendy Relue ("RN Relue"), who took Plaintiff's vital signs.

RN Relue escorted Plaintiff to an outpatient surgical procedure room, where RN Relue took Plaintiff's vital signs and asked him to remove his shirt.  At that time, Plaintiff asked RN Relue about the qualifications of Dr. William Carter ("Dr. Carter"), the procedures Dr. Carter would perform, and whether Dr. Carter could remove the skin tag located on Plaintiff's cheek.  RN Relue informed Plaintiff that such removal would violate VA policy, as it was considered a "cosmetic" procedure, and that Dr. Carter would arrive soon.  Plaintiff asked RN Relue to mention his request to Dr. Carter.

After concluding treatment of another patient, Dr. Carter arrived and proceeded to discuss the scheduled surgical procedure, including the type of incision Dr. Carter planned to utilize as well as Plaintiff's request to have the skin tag removed.  During the discussion with Dr. Carter, Plaintiff disagreed with the type of incision Dr. Carter indicated he would use but consented to Dr. Carter's preferred method.  Plaintiff again asked Dr. Carter about removal of the skin tag.  When RN Relue sought to contribute to the discussion, Plaintiff told her that he was not talking to her, to which Dr. Carter responded that Plaintiff should not be disrespectful.  Plaintiff responded indicating it was not his intention to be disrespectful, but he considered the

---

[2]  All facts are taken from Plaintiff's Complaint (Doc. 2).

2

decision to remove or not remove the skin tag as with Dr. Carter's discretion, not RN Relue's discretion.

Following that exchange, Dr. Carter informed Plaintiff that he would not remove Plaintiff's skin tag. At that time, Plaintiff exchanged some words with Dr. Carter, after which Dr. Carter directed that the police be called because Dr. Carter indicated that he felt threatened by Plaintiff. According to Plaintiff, Dr. Carter shouted, "Someone call the police, I'm being threatened," and RN Relue then followed Dr. Carter into the hallway. After a short period, RN Relue returned with VA Police Officer David Bozeman ("Officer Bozeman") and Assistant Chief of Dermatology Dr. Sanik ("Dr. Sanik"). Plaintiff was then led to another room, where Plaintiff made an appointment for the same outpatient surgical procedure as the one canceled by Dr. Carter and RN Relue.

After that, Officer Bozeman escorted Plaintiff out of the building after a short wait and conducted an interview with Plaintiff in which Officer Bozeman indicated that Dr. Carter and RN Relue both accused Plaintiff of threatening them. Officer Bozeman then took Plaintiff to the main hospital where he was placed in a separate room and spoke with a psychiatrist and psychologist about the incident and his basis for concern regarding any delay in his treatment. The psychiatric staff released Plaintiff shortly thereafter that afternoon. Approximately two weeks later, Dr. Sanik performed the same outpatient surgical procedure canceled by Dr. Carter and RN Relue, and, in doing so, Dr. Sanik utilized Plaintiff's preferred surgical method and removed several skin tags, all of which took less than thirty minutes, per Plaintiff's request.

In May 2018, Plaintiff initially filed his Complaint in state court, naming Dr. Carter and RN Relue as the defendants and asserting claims for defamation, intentional infliction of severe emotional distress, intentional breach of fiduciary duty, and tortious interference with a contractual relationship against RN Relue and Dr. Carter. Namely, Plaintiff alleges that the

3

statements made by Dr. Carter and RN Relue were false and defamatory and caused damage to his "good character and good reputation." Plaintiff further alleges that he suffered severe emotional distress as a result of the actions of Dr. Carter and RN Relue canceling his originally scheduled surgical procedure and that, in canceling such procedure, Dr. Carter and RN Relue breached a fiduciary duty each of them owed to Plaintiff as medical professionals in charge of his medical treatment. Lastly, Plaintiff alleges that the cancellation of the procedure by Dr. Carter and RN Relue constituted an intentional and unjustified interference with the relationship of the VA to veterans, including Plaintiff, to provide competent medical care in a timely fashion.

The Government subsequently removed the case from state court to federal court (Doc. 1).[3] Following removal, the Government filed the instant motion, seeking to dismiss Plaintiff's claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted (Doc. 18).[4] By the motion, the Government essentially argues that (1) Plaintiff's claims for defamation should be dismissed for lack of subject matter jurisdiction as they are expressly excluded from the United States' waiver of sovereign immunity under the Federal Torts Claims Act ("FTCA"); (2) Plaintiff's claims for intentional infliction of severe emotional distress should be dismissed for failure to state a claim because Plaintiff failed to identify any "outrageous conduct" or any intent related to the incident in question; (3) Plaintiff's claims for intentional breach of fiduciary duty should be dismissed for failure to state a claim because Plaintiff failed to identify any fiduciary duty breached during the incident in question; and (4) Plaintiff's claims for tortious interference with contract or business relations should be dismissed for lack of subject matter jurisdiction, as they are excluded from the United States'

---

[3] Plaintiff sought to remand the matter back to state court (Doc. 25), but, upon consideration, the Court denied Plaintiff's request for remand (Doc. 29).

[4] Plaintiff recently filed an Amended Complaint (Doc. 33), which sets forth the same claims as the Complaint and was filed without leave of Court.

waiver of sovereign immunity under the FTCA, or, alternatively, should be dismissed for failure to state a claim upon which relief may be granted because Plaintiff failed to identify a business relationship or contract between himself and an identifiable third party under which he possesses any legal rights. Plaintiff responds in opposition, arguing that his claims should go forward (Doc. 24).[5]

### II. Standard of Review

In reviewing a complaint, courts hold *pro se* pleadings to a less stringent standard and therefore construe the complaint more liberally. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (*per curiam*) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). Notwithstanding such liberal construction, a *pro se* litigant must still conform to procedural rules, and a presiding judge need not rewrite a deficient pleading. *McFarlin v. Douglas Cty.*, 587 F. App'x 593, 595 (11th Cir. 2014) (citation omitted). In fact, the presiding judge maintains authority to dismiss a complaint for failure to comply with the federal rules or to require the plaintiff to file a more definite statement. *Id.*

#### A. Rule 12(b)(1)

The Government moves, in part, to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction. In pursuing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), Federal Rules of Civil Procedure, a movant may challenge subject matter jurisdiction either facially or factually. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (*per curiam*). In this case, the Government presents a facial attack on the Court's

---

[5] In his response, Plaintiff sets forth several baseless accusations against the Court and the Assistant United States Attorney assigned to this matter (*see* Doc. 24, at 4, 6, & 7). Such vitriol will not be tolerated and thus will be stricken to the extent set forth in further filings with this Court.

subject matter jurisdiction with respect to Counts I, II, VII, and VIII (Doc. 18, at 2, 6-8). When considering a facial attack on subject matter jurisdiction, courts take the allegations in the complaint as true in determining whether the plaintiff sufficiently alleged a basis of subject matter jurisdiction. *Id.* at 1529.

### B. Rule 12(b)(6)

Alternatively, the Government seeks to partially dismiss Plaintiff's Complaint for failing to state a viable claim for relief. In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court views the complaint in the light most favorable to the plaintiff and accepts as true all the factual allegations contained therein. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (*per curiam*) (citation omitted). The court need not, however, "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint must contain a short and plain statement of the grounds for the court's jurisdiction and a short and plain statement of the claim showing that the pleader is entitled to relief, stating claims in numbered paragraphs each limited as far as practicable to a single set of circumstances. Fed. R. Civ. P. 8(a)(2) & 10(b). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, a plaintiff must provide the grounds for his or her entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Accordingly, only a complaint that states a plausible claim for relief will survive a motion to dismiss. *See id.* at 679.

**III.     Discussion**

As an initial matter, the United States, as a sovereign entity, remains immune from suit unless it consents to be sued. *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015) (citations omitted). With the enactment of the FTCA, the United States waived its sovereign immunity from certain tort claims.[6] *Id.*; *see* 28 U.S.C. § 2680. In enacting the FTCA, the United States maintained the power to condition a waiver of its immunity as broadly or narrowly as it desired and according to whatever terms it chose to impose. *Zelaya*, 781 F.3d at 1321-22 (citation omitted). In considering the limitations and conditions upon which the United States consents to be sued, therefore, courts must strictly observe such limitations and conditions while not implying any exceptions not present within the terms of the waiver. *Soriano v. United States*, 352 U.S. 270, 276 (1957) (citation omitted). Sovereign immunity is jurisdictional in nature, with the terms of the United States' consent to be sued defining the court's jurisdiction to entertain the suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted). Importantly, "[i]f there is no specific waiver of sovereign immunity as to a particular claim filed against the Government, the court lacks subject matter jurisdiction over the suit." *Zelaya*, 781 F.3d at 1322; *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

---

[6] Plaintiff initially contested the removal of this case, the applicability of the FTCA to his claims, and the substitution of the Government for Dr. Carter and RN Relue as the named defendant (Docs. 8, 13, 14, 22, & 25). While the instant motion remained pending, the district judge denied Plaintiff's motion to remand and permitted the Government to substitute as the proper defendant pursuant to the FTCA (Docs. 28 & 29). Any argument directed at those issues or at claims against Dr. Carter or RN Relue in their individual capacities thus has been rendered moot for purposes of consideration of the instant motion.

### A. Defamation

In Counts I and II, Plaintiff asserts claims for defamation against Dr. Carter and RN Relue (Doc. 2, at ¶¶58-71). Plaintiff alleges that, during his appointment at Haley, Dr. Carter shouted, "[S]omeone call the police, I'm being threatened" (Doc. 2, at ¶¶60-61). Plaintiff further alleges that RN Relue called the VA police and elaborated upon Dr. Carter's statement when she reported the incident to the VA police by indicating that Plaintiff was the threatening party (Doc. 2, at ¶¶61, 67-68). According to Plaintiff, he did not threaten Dr. Carter or RN Relue, thereby making Dr. Carter's statement false, and both Dr. Carter's statement and RN Relue's statement to the police were made without reasonable consideration or care as to the accuracy of the truth or the effect upon Plaintiff (Doc. 2, at ¶¶63 & 70). Plaintiff alleges that he suffered damages as a result of the purported defamatory statement as follows:

> The Plaintiff's good character and good reputation was damaged; he was escorted out of the building in police custody, transferred to the main hospital, and confined to the "mental room" in the emergency department. The scheduled outpatient surgical procedure was cancelled causing the Plaintiff severe emotional distress fearing the cancer had spread. Plaintiff suffered physical, mental, and financial damages.

(Doc. 2, at ¶¶64 & 71)

"Defamation encompasses both libel and slander," with slander confined to defamatory words spoken, and libel confined to defamatory written statements. *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 n.2 (S.D. Fla. 2014) (internal quotation marks and citation omitted); *see also AFI Holdings of Ill., LLC v. Waterman Broadcasting*, Case No: 2:17-cv-491-FtM-99CM, 2018 WL 3093452, at *3 (M.D. Fla. June 22, 2018) ("Defamation, which includes libel and slander, is generally defined as the unprivileged publication of false statements which naturally and proximately result in injury to another") (internal footnote, internal quotations, and citation omitted). Notably, as the Government asserts, the FTCA explicitly excludes tort claims for libel and slander from its waiver of sovereign immunity. 28 U.S.C. § 2680(h).

Indeed, as the Eleventh Circuit makes clear, claims for libel and slander, and thus defamation, are properly dismissed for lack of subject matter jurisdiction because the "FTCA specifically states that it does not waive the United States' sovereign immunity for claims arising out of libel and slander." *Smith v. Sec'y, United States Dep't of Commerce*, 495 F. App'x 10, 12 (11th Cir. Oct. 30, 2012); *see also Garling v. United States Environmental Protection Agency*, 849 F.3d 1289, 1299 (10th Cir. 2017) ("Defamation claims are the equivalent of libel and slander and thus exempt from the waiver of sovereign immunity under the intentional tort exception.") (citation and internal quotations omitted). Accordingly, it is recommended that Plaintiff's claims for defamation (Counts I and II) be dismissed, as the Court lacks subject matter jurisdiction to consider those claims.

### B. Intentional Infliction of Severe Emotional Distress

Next, in Counts III and IV, Plaintiff asserts claims for intentional infliction of severe emotional distress against Dr. Carter and RN Relue (Doc. 2, at 8-11). In doing so, Plaintiff alleges that Dr. Carter and RN Relue knew or should have known that the cancellation of his surgical procedure would likely result in Plaintiff suffering severe emotional distress and that Plaintiff in fact suffered severe emotional distress as a result of the cancellation of his medical procedure by Dr. Carter and RN Relue (Doc. 2, at ¶¶82, 84, 95, & 97). According to Plaintiff, his primary dermatologist identified and removed several cancerous moles from Plaintiff's body previously, and, subsequently, Plaintiff underwent other testing, including bloodwork and a biopsy of the prostate, with the latter leading to a hospital admission (Doc. 2, at ¶¶73-76 & 86-89). Plaintiff alleges that the procedure scheduled with Dr. Carter and RN Relue was to determine whether the cancer had metastasized to any surrounding areas (Doc. 2, at ¶¶78 & 91). On the day of the scheduled procedure with Dr. Carter and RN Relue, Plaintiff expressed his concerns regarding the potential growth and spread of previously diagnosed cancer to Dr.

9

Carter and RN Relue, so, according to Plaintiff, given the potential for cancer to grow and spread, they should have known the issue "would weigh heavily on the patient's (Plaintiff) mind based upon the morning's conversation" (Doc. 2, at ¶¶80 & 93). Plaintiff asserts that he experienced anxiety, as allegedly observed by Officer Bozeman, and that his psychiatric evaluation would demonstrate that Plaintiff suffered severe emotional distress due to the actions of Dr. Carter and RN Relue (Doc. 2, at ¶¶84 & 97).

Notwithstanding, the Government contends that, although claims for intentional infliction of emotional distress are not expressly excepted under the FTCA, Plaintiff's claims should be dismissed because Plaintiff failed to state a viable claim for intentional infliction of emotional distress. Under Florida law, to state a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe. *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So.2d 277, 278 (Fla. 1985)). In Florida, where the actor knows that severe distress is certain or substantially certain to result from his or her conduct, courts consider such conduct intentional. *Hart*, 894 F.2d at 1548 (citations omitted). Further, where an actor's conduct "is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," courts conclude that such action constitutes outrageous conduct. *Id.* (citations and internal quotation marks omitted). Liability for an intentional infliction of emotional distress claim does not, however, extend to mere insults, indignities, threats, or false accusations. *See Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012) (quoting *Williams v. Worldwide Flight Servs., Inc.*, 877 So.2d 869, 870 (Fla. 3d DCA 2004) (*per curiam*)). Likewise, "[i]t is not enough that the defendant intended criminal or tortious conduct,

or to inflict emotional distress, and it is not enough if the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort." *Blumenthal v. Smith*, Case No: 6:17-cv-975-Orl-40TBS, 2018 WL 3067910, at *3 (M.D. Fla. Feb. 26, 2018) (internal quotations and citations omitted). In considering whether the facts alleged qualify as sufficiently outrageous to support a claim for intentional infliction of emotional distress, Florida courts therefore apply a very high standard. *Foreman v. City of Port St. Lucie*, 294 F. App'x 554, 557 (11th Cir. 2008) (citation omitted).

The Government argues that Plaintiff's allegations fail to establish any intention to cause emotional distress, any outrageous conduct, or any indication that Plaintiff suffered distress qualifying as severe. With respect to the intentional nature of the conduct, Plaintiff asserts that Dr. Carter and RN Relue "knew or should have known that if some of the cancer still remained, it had the potential to grow and spread; and this would weigh heavily on the patient's (Plaintiff) mind based upon the morning's conversation" (Doc. 2, at ¶¶80 & 93); Dr. Carter and RN Relue "intentionally cancelled the scheduled outpatient surgical procedure because the patient (Plaintiff) was allegedly rude" (Doc. 2, at ¶¶82 & 95); and "for the Defendants to cancel a critical surgical procedure because they were offended by the patient's comments goes beyond all bounds of medical and civil decency and must be regarded as odious and utterly intolerable in the medical community and in a civilized society" (Doc. 2, at ¶¶83 & 96). Plaintiff's allegations consist merely of legal conclusions, none of which appear grounded in fact. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citation omitted). Plaintiff's conclusory legal conclusions regarding intent are insufficient. Moreover, none of Plaintiff's allegations indicate any deliberate or reckless actions taken by

11

Dr. Carter or RN Relue or any other VA personnel.  Instead, given Plaintiff's own actions and statements, no reasonable inference can be drawn that Dr. Carter, RN Relue, or other VA personnel acted deliberate or reckless during their handling of the incident or with respect to the rescheduling of the outpatient surgical procedure.

Even, assuming *arguendo*, that Plaintiff properly alleged an intention on the part of Dr. Carter, RN Relue, or other VA personnel to cause Plaintiff emotional distress, Plaintiff failed to allege any conduct qualifying as outrageous under Florida law.  The question of whether conduct qualifies as outrageous enough to support a claim for intentional infliction of emotional distress is a question of law.  *Lincoln v. Fla. Gas Transmission Co. LLC*, 608 F. App'x 721, 722 (11th Cir. 2015) (*per curiam*).  In considering whether conduct qualifies as outrageous, courts must thus make an objective determination, with the subjective response of the person suffering emotional distress not controlling the outcome.  *Id*.  Here, although Plaintiff alleges that he experienced some level of emotional distress as a result of the cancellation of his outpatient surgical procedure, the cancellation of the procedure and the intervention of the VA police based on the actions of Plaintiff and Dr. Carter's statement that he felt threatened or that Plaintiff was rude simply do not constitute outrageous conduct under Florida law, especially in light of the fact that, within approximately two weeks from the date of the incident, the VA rescheduled and conducted Plaintiff's outpatient surgical procedure, employing Plaintiff's preferred method and accommodating Plaintiff's request for additional procedures.  *See McCullough v. Nesco Resources LLC*, No. 18-12070, 2019 WL 117486, at *4 (11th Cir. Jan. 7, 2019) (concluding that a district court did not err in finding that a plaintiff failed to state a claim for intentional infliction of emotional distress under Florida law where the plaintiff alleged that employees submitted him to a drug test, expressed concern about his age and weight, strung him along in the hiring process, and spoke defensively toward him); *see Lopez*, 676 F.3d at

12

1236-37 (affirming the decision of the district court to dismiss an intentional infliction of emotional distress claim based on the finding that verbal abuse which did not involve any obscenities, racial epithets, or threats of violence did not meet the extremely high standard to state an intentional infliction of emotional distress claim under Florida law). Such conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hart*, 894 F.2d at 1548. As such, the conduct does not rise to the level of outrageous under Florida law.

Additionally, no reasonable inference can be drawn that any emotional distress purportedly suffered by Plaintiff was sufficiently severe. "'[S]evere emotional distress means emotional distress of such a substantial quality or enduring quality[] that no reasonable person in a civilized society should be expected to endure it.'" *Kim v. Jung Hyun Chang*, 249 So.3d 1300, 1305 (Fla. 2d DCA 2018) (quoting *Kraeer Funeral Homes, Inc. v. Noble*, 521 So.2d 324, 325 (Fla. 4th DCA 1988)). A reasonable inference cannot be drawn that Plaintiff suffered emotional distress of a substantial or enduring quality based on Plaintiff's allegations. If anything, the incident created a minor inconvenience for Plaintiff, while in fact leading to a more favorable surgical outcome. Given the foregoing, therefore, Plaintiff failed to state a claim for intentional infliction of emotional distress under Florida law. Accordingly, it is recommended that claims for intentional infliction of emotional distress (Counts III and IV) be dismissed.

### C.     Intentional Breach of Fiduciary Duty

Additionally, in Counts V and VI, Plaintiff alleges that Dr. Carter and RN Relue each intentionally breached a fiduciary duty (Doc. 2, at 11-13). Essentially, Plaintiff alleges that, as medical professionals providing Plaintiff treatment, Dr. Carter and RN Relue owed Plaintiff a

fiduciary duty to act in Plaintiff's best interest and perform the scheduled outpatient surgical procedure as originally scheduled (Doc. 2, at ¶¶99-102 & 110-113).  Plaintiff contends that the cancellation of the surgical procedure by Dr. Carter, with the concurrence and lack of objection by RN Relue, was not done for a medical reason or with Plaintiff's best interests in mind but rather due to "the ulterior purpose to punish the Plaintiff for being 'rude'" (Doc. 2, at ¶¶104-05 & 115-16).  As such, Plaintiff asserts that the decision not to perform the scheduled surgical procedure constituted a breach of a fiduciary duty owed by the VA to Plaintiff and resulted in physical, mental, and financial damage to Plaintiff (Doc. 2, at ¶¶108 &119).

The Government argues that these claims also should be dismissed as Plaintiff failed to state a cognizable claim for intentional breach of fiduciary duty.  In Florida, the elements of a breach of a fiduciary duty include the existence of a fiduciary duty and the breach of that duty such that the breach constitutes the proximate cause of the plaintiff's damages.  *Virani v. Homefield Fin., Inc.*, Case No. 6:09-cv-511-Orl-22DAB, 2009 WL 10670430, at *9 (M.D. Fla. Dec. 23, 2009) (quoting *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002)).  The Government contends that Plaintiff failed to state a claim because a fiduciary duty regarding the scheduling or rescheduling of medical procedures does not exist; Plaintiff's allegations establish that his own behavior, rather than any breach on behalf of the VA or its employees, resulted in the rescheduling of the procedure; and Plaintiff's blanket statement regarding damages is insufficient.  As the Government contends, Plaintiff failed to state a claim for breach of fiduciary duty.

Namely, the Florida Supreme Court recognizes that a fiduciary relationship exists between a doctor and his or her patient.  *See Langbehn v. Public Health Trust of Miami-Dade Cty.*, 661 F. Supp. 2d 1326, 1347 (S.D. Fla. 2009) (citations omitted).  Notwithstanding, as the Government argues, no reasonable inference can be drawn that a fiduciary duty exists regarding

14

the scheduling or rescheduling of a medical procedure. Instead, Florida recognizes fiduciary duties on behalf of physicians regarding confidential communications and concealment of facts known about harm done to a patient, for example. *Id.* (citations omitted). Plaintiff thus failed to properly allege the existence of a fiduciary duty.

Even if such fiduciary duty existed, no reasonable inference can be drawn that Dr. Carter, RN Relue, or any VA personnel breached such duty. As discussed above, the outpatient surgical procedure was canceled and rescheduled due to the actions taken by Plaintiff. The outpatient surgical procedure was also promptly rescheduled, the procedure occurred within approximately two weeks of the originally scheduled procedure, and the rescheduled procedure provided additional benefits to Plaintiff. The allegations therefore do not establish that a breach or, for that matter, any damages occurred. As such, Plaintiff failed to state a claim for breach of fiduciary duty, and it is recommended that Plaintiff's claims for intentional breach of fiduciary duty (Counts V and VI) be dismissed.

### D.  Tortious Interference with a Contractual Relationship

Finally, in Counts VII and VIII, Plaintiff contends that Dr. Carter and RN Relue each tortuously interfered with a contractual relationship (Doc. 2, at 13-15). Under the FTCA, the United States did not waive its sovereign immunity as to "any claim arising out of … interference with contract rights." 28 U.S.C. § 2680(h). To the extent that Plaintiff seeks to assert claims for tortious interference with a contractual relationship, therefore, Plaintiff's claims fail. *See Wagdy v. Sullivan*, Civil Action No. 16-2164 (TJK), 2018 WL 2304785, at *2 (D.D.C. May 18, 2018). Namely, the FTCA bars Plaintiff's claims, and, thus, the Court lacks jurisdiction to entertain such claims. Accordingly, it is recommended that Plaintiff's claims for tortious interference with a contractual relationship (Counts VII and VIII) be dismissed with prejudice, as the Court lacks subject matter jurisdiction to consider those claims.

Even assuming Plaintiff could establish jurisdiction over his tortious interference claims, Plaintiff failed to allege facts sufficient to establish the elements of such claims. In Florida, a claim for intentional interference with a contractual relationship consists of the following elements: (1) the existence of a business relationship between the plaintiff and a third party, not necessarily evidenced by an enforceable contract, under with the plaintiff possesses legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant that induces or otherwise causes the third party not to perform; and (4) damage to the plaintiff resulting from the third party's failure to perform. *DNA Sports Performance Lab, Inc. v. Club Atlantis Condo. Assoc., Inc.*, 219 So.3d 107, 110 (Fla. 3d DCA 2017) (citation omitted). In seeking to assert his tortious interference with a contractual relationship claim, Plaintiff alleges the following regarding the purported contractual relationship at issue:

> The Plaintiff, a Viet Nam era veteran, honorably discharged, has both a contractual and advantageous business relationship with the U.S. Department of Veterans Affairs under which the Plaintiff has legal rights to include discounted or free medical care.
>
> ***
>
> The Plaintiff contends this cancellation by Defendant Carter was intentional and unjustified interference with the relationship by the U.S. Department of Veterans Affairs to provide veterans (including the Plaintiff) competent medical care in a timely fashion.
>
> ***
>
> The Plaintiff contends this cancellation approved by Defendant Relue was intentional and unjustified interference with the relationship by the U.S. Department of Veterans Affairs to provide veterans (including the Plaintiff) competent medical care in a timely fashion.

(Doc. 2, at ¶¶ 121, 125, 130 & 134). As a consequence of such alleged tortious interference by Dr. Carter and RN Relue, Plaintiff contends that he experienced physical, mental, and financial damages (Doc. 2, at ¶¶126 & 135).

16

As the Government contends, however, Plaintiff's allegations merely demonstrate a statutory right to receive medical care at the VA as a military veteran rather than any contractual or business relationship with a third party for medical care. *See* 38 U.S.C. § 1701 *et seq.* Even construing Plaintiff's allegations more broadly, to the extent that Plaintiff alleges a contractual or business relationship existed, "[u]nder Florida law, a claim for tortious interference with contract cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001) (citations omitted). Rather, an interfering defendant must be a stranger to the contractual or business relationship. *Id.* Here, Plaintiff contends that a purported contractual and advantageous business relationship exists between himself and the Government, *i.e.* the VA (Doc. 2, at ¶¶121, 130). Under Florida law, the Government cannot interfere with such purported contractual or business relationship as it remains a party to that relationship.

Furthermore, even if Plaintiff properly alleged the existence of a contractual or business relationship, Plaintiff failed to allege any cognizable damage resulting from actions taken by Dr. Carter, RN Relue, or any other VA personnel. Indeed, Plaintiff indicates that the VA rendered the exact medical services he sought approximately two weeks after he first presented to the VA and met with Dr. Carter and RN Relue. In fact, not only did Plaintiff receive the mole removal he presented for initially, he received the preferred removal method and additionally received extra medical services in the form of his requested skin tag removal (Doc. 2, at ¶¶46-47).[7]

---

[7] Although Plaintiff alleges that he suffered financial damages, nothing in the Complaint indicates that the VA billed Plaintiff for any of the subsequent services rendered by Dr. Sanik or that Plaintiff otherwise incurred fees or costs as a result of the delayed procedure.

17

Based on the foregoing, Plaintiff failed to establish that the Court maintains jurisdiction over his claims.  Even construing Plaintiff's allegations broadly, Plaintiff failed to state a viable claim for tortious interference with a contractual relationship.  As a result, it is recommended that Plaintiff's claims for tortious interference with a contractual relationship (Counts VII and VIII) be dismissed, as the Court lacks jurisdiction to hear the claims and as Plaintiff fails to state viable claims.[8]

### IV. Conclusion

For the foregoing reasons, it is hereby

RECOMMENDED:

1. The Government's Motion to Dismiss (Doc. 18) be GRANTED.

IT IS SO REPORTED in Tampa, Florida, on this 15th day of January, 2019.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

---

[8] Ordinarily, a party must receive at least one opportunity to amend before the district court dismisses the complaint. *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1014 (11th Cir. 2005) (*per curiam*) (citation omitted). "A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001).  Here, amendment would prove futile.

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.


cc:  Hon. William F. Jung
     Counsel of Record
     Plaintiff, *pro se*